ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| LAURA MALDONADO CAETANI, ET AL. RECURRIDOS | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
|---|---|---|
| v. | KLCE202401065 | Civil Número: CA2023CV03009 |
| NEGOCIADO DEL SISTEMA DE EMERGENCIAS 911, ET AL. PETICIONARIOS | | Sobre: Daños y perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de noviembre de 2024.

Comparece el Gobierno de Puerto Rico, por sí y en representación del Departamento de Seguridad Pública (Estado; peticionario), mediante un recurso de *certiorari*; nos solicita que expidamos un auto de *certiorari*, y revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI) el 9 de julio de 2024, notificada al día siguiente 10 de julio de 2024, y ordenemos el archivo administrativo del caso.

Adelantamos que, denegamos expedir el auto de *certiorari*.

### I

El 25 de septiembre de 2023 la señora Laura Maldonado Caetani, la señora Vanessa Carolina Ramos Lugo y tres menores de edad (en conjunto, los recurridos) instaron una *Demanda* en concepto de daños y perjuicios por sucesos ocurridos el 28 de septiembre de 2021.[1] Las partes demandadas fueron el Estado Libre Asociado de Puerto Rico,[2] Universal Care Ambulance, Inc., José Padilla Flores en concepto de dueño junto a su esposa y la sociedad legal de gananciales compuesta por ambos, y Mapfre

---

[1] Apéndice del recurso, págs. 1-7.
[2] También fue demandado el Negociado del Sistema de Emergencias 911 y el Departamento de Seguridad Pública, sin embargo, al no ser entidades con capacidad jurídica fueron demandados por conducto del Estado Libre Asociado de Puerto Rico.

Número Identificador
RES2024_____

Praico Insurance Company. En dicha *Demanda* plantearon que los codemandados respondían por los daños reclamados solidariamente y solicitaron una cantidad no menor de $500,000.00 por los daños económicos y emocionales sufridos por los codemandantes y una cantidad no menor de $500,000.00 por los daños físicos y mentales sufridos por el fenecido señor Daniel Viera Maldonado.[3]

Luego de otros trámites procesales, el Estado sometió el 24 de junio de 2024 el escrito titulada *Aviso de Injunction Paralizando la Litigación del Presente Caso y sobre el Requisito de Presentar una Solicitud de Gastos Administrativos ante el Tribunal de Título III*.[4] En el mencionado escrito sostuvo que el caso se encontraba paralizado a tenor con el *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (*Confirmation Order*) emitido por el Tribunal de Distrito de EE. UU. para el Distrito de Puerto Rico y que, como consecuencia de que no existía alguna orden que autorizara la continuación de los procesos, el TPI no contaba con jurisdicción para atender el caso.[5] Esto último porque al haber sido confirmado el Plan de Ajuste de la deuda de Puerto Rico —y este ser efectivo a partir del 15 de marzo de 2022— quedó paralizada, por medio de interdicto permanente, toda causa de acción que haya surgido antes de la fecha de efectividad del Plan de Ajuste.[6] De igual manera, el Estado añadió en su escrito que el *Confirmation Order* también advirtió acerca de la necesidad de presentar una solicitud de pago por Reclamaciones de Gastos Administrativos (*Administrative Expense Claim*) para todo reclamante interesado y la propia Junta de Supervisión Fiscal notificó la fecha límite para ello, siendo esta el 13 de junio de 2022.[7] Es decir, noventa (90) días luego del aviso. Además,

---

[3] Apéndice del recurso, pág. 6.
[4] Apéndice del recurso, págs. 135-147.
[5] Apéndice del recurso, págs. 136-137.
[6] *Id.*
[7] Apéndice del recurso, págs. 137 y 140.

se notificó en la orden que, de no entregar dicha solicitud o evidencia, el reclamante quedaba permanentemente impedido de dicho pago por parte del deudor.[8] Como parte de su análisis, el Estado concluyó que, al enfrentarse a hechos que alegadamente ocurrieron el 28 de septiembre de 2021, el caso estaba sujeto a la paralización.[9] Por tanto, continuar con el trámite judicial del caso violentaría los preceptos avalados por el tribunal federal y el TPI estaría actuando sin jurisdicción.[10]

En respuesta a lo anterior, los recurridos presentaron su oposición a la paralización donde, de entrada, afirmaron que una acción de daños y perjuicios al amparo del Código Civil no cae bajo lo que constituye un gasto administrativo, según definido por el propio Plan de Ajuste. Por ello, se refieren a la Sección 1.424 del Plan de Ajuste la cual provee para que reclamaciones como la del caso de marras, no se afecten por la *Orden de Relevo de Deudas*, entiéndase, la paralización.[11] La citada sección establece expresamente lo siguiente: "*provided, however, that 'Released Claims' is not intended to include, nor shall it have the effect of including, Claims or Causes of Action unrelated to the Debtors or claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted, or that could have been asserted, whether sounding in contract or tort* […]"[12] Por lo anterior, arguyeron que como la acción instada estaba basada en conducta torticera y negligencia crasa, el Plan de Ajuste permitía la continuación de los procedimientos.[13]

El 9 de julio de 2024 el TPI se expresó mediante *Resolución* donde declaró No Ha Lugar la solicitud de paralización y acogió los planteamientos de los recurridos como parte de su razonamiento.[14] Además, adujo lo siguiente:

> Es cierto que el 3 de mayo de 2017, el Gobierno de Puerto Rico y la Junta de Supervisión y Administración Financiera para Puerto Rico, radicaron una petición de quiebra ante el

---

[8] Apéndice del recurso, pág. 140.
[9] Apéndice del recurso, pág. 141.
[10] *Id.*
[11] Apéndice del recurso, págs. 155-156.
[12] Apéndice del recurso, pág. 156.
[13] *Id.*
[14] Apéndice del recurso, pág. 159.

Tribunal de Distrito de los Estados Unidos; de conformidad con lo establecido en el "Puerto Rico Oversight Management, and Economic Stability Act" (PROMESA). 48 USC Sec. 2101, et. seq.

Luego del trámite de rigor, el 18 de enero de 2022, la Hon. Laura Taylor Swain, Jueza por designación para el Tribunal de Distrito de los Estados Unidos del Distrito de Puerto Rico, dictó el Confirmation Order en el caso In re: Commonwealth of Puerto Rico, caso núm. 17 BK 3283- LTS. En síntesis, mediante la orden se confirmó el Plan de Ajuste, el cual entró en vigor el 15 de marzo de 2022.

Ahora bien, en este caso los hechos que dan lugar a la reclamación alegadamente ocurrieron el **28 de septiembre de 2021**; por lo que constituyen una reclamación de daños post quiebra por hechos que no están incluidos dentro del proceso, ni protegidos por la paralización o el trámite administrativo para ajustar dichos reclamos. **Tampoco, por definición, constituyen un gasto administrativo dentro de un proceso de quiebra como correctamente señala la parte demandante.**

En la alternativa, el 20 de octubre de 2022, se dictó una orden intitulada Order Extending Administrative Claim Bar Date For Certain Parties And Modifying Discharge Injuction en el que se dispuso que las reclamaciones de daños en los que la responsabilidad del Estado no excede de $75,000.00 o $150,000.00 (según sea el caso conforme la Ley de Pleitos Contra el Estado), están exentas de la paralización. Doc. #22650 Caso núm. 17 BK 3283-LTS.

Por tal razón, se declara no ha lugar la solicitud de paralización.[15]

Inconforme con lo resuelto, el Estado sometió el escrito titulado *Comparecencia Especial en Solicitud de Reconsideración de la Resolución* donde sostuvo su posición en cuanto a que la paralización aplicaba al caso. Esto a raíz de que el *Confirmation Order* establece que el interdicto permanente expresamente indica "que están permanentemente prohibidas, desde y después de la fecha de efectividad del Plan de Ajuste, comenzar o continuar directa o indirectamente, de cualquier forma, cualquier acción u otros procedimientos (incluyendo, sin limitarse a cualquier procedimiento judicial, arbitraje o administrativo y cualquier otro), en cualquier clase de reclamación, deuda o responsabilidad, descargada a través del Plan".[16] Y que la mencionada protección continúa vigente hasta el día de hoy. No

---

[15] Apéndice del recurso, págs. 159-160.
[16] Apéndice del recurso, pág. 180.

obstante, a través de una *Orden* el TPI la declaró No Ha Lugar y manifestó lo siguiente:

> A tales fines, nos sostenemos en lo resuelto y subrayamos que [en] este caso surge que la responsabilidad del ELA está limitada por la Ley de Pleitos Contra el Estado, Ley 104 de 29 de junio de 1956, según enmendada. Esto implica, que como cuestión de derecho no puede responder por más de los topes de $75,000.00 / $150,000.00 si se encuentra que fue negligente. Tampoco contamos con determinaciones de hechos que nos permitan establecer cuál fue el daño sufrido, su valorización y si la misma excede lo dispuesto en la orden que autorizó el litigio de estos casos. Véase *Torres Méndez vs. Departamento de Justicia*, KLCE202400393. (*Certiorari* Denegado CC-2024-0366).[17]

Aun inconforme, el Estado acude a este tribunal revisor mediante *certiorari* y señalan que el foro primario cometió los siguientes errores:

> El Tribunal de Primera Instancia erró al concluir que el presente caso no está afectado por el interdicto permanente dispuesto en la Orden de Confirmación, bajo la errónea premisa de que, por ser un caso *post-petición*, no goza de dicha protección.

> El Tribunal de Primera Instancia erró al concluir, en la alternativa, que, debido a que el Estado no responde en exceso de los topes monetarios dispuestos en la Ley de Pleitos contra el Estado, la Orden de Modificación permitió la continuación de casos como el presente.

La parte recurrida presentó su *Alegato en Oposición a la Petición de Certiorari*, por lo que el recurso quedó perfeccionado y nos encontramos en posición de resolver.

**II**

**A**

La Regla 52.1 de Procedimiento Civil de 2009, vigente para todo recurso de *certiorari* instado a partir del 1 de julio de 2010, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de

---

[17] Apéndice del recurso, pág. 216.

rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. **Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.**

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. (Énfasis nuestro.) 32 LPRA Ap. V, R. 52.1.

La Regla 52.1 de las Reglas de Procedimiento Civil, *supra*, "alteró sustancialmente el enfoque prácticamente irrestricto característico de la revisión interlocutoria de las órdenes y resoluciones emitidas por el TPI hasta entonces vigente, dando paso a uno mucho más limitado". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 336 (2012). Por tanto, el asunto planteado en el recurso instado por el promovente debe tener cabida bajo alguno de los incisos de la Regla 52.1 de Procedimiento Civil, *supra*, pues el mandato de la Regla 52.1 establece taxativamente que "solamente será expedido" el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia y en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.[18]

Así las cosas, el primer examen que debe pasar todo recurso de *certiorari* para ser expedido es que debe tener cabida bajo alguno de los incisos de la Regla 52.1 de Procedimiento Civil, *supra*. Este *test* es mayormente objetivo.  Por esto, se ha dicho que "los litigantes deben abstenerse de presentar recursos de *certiorari* para revisar órdenes y resoluciones de asuntos que no estén cobijados bajo las disposiciones de

---

[18] La Ley 177 del 30 de noviembre de 2010 (Ley 177) "extendió la facultad de presentar recursos de *certiorari* para revisar también aquellas órdenes o resoluciones interlocutorias dictadas por el TPI que involucren asuntos de interés público o que presenten situaciones que demanden la atención inmediata del foro revisor, pues aguardar hasta la conclusión final del caso conllevaría un 'fracaso irremediable de la justicia'". *IG Builders et al. v. BBVAPR, supra*, pág. 337.

la Regla 52.1".[19] El tribunal revisor debe negarse a expedir el auto de *certiorari* automáticamente cuando el mismo gire en torno a alguna materia extraña a las disposiciones de la Regla 52.1.

Superada esta primera etapa, procede hacer un segundo examen relativamente subjetivo. Se trata de nuestro examen tradicional caracterizado por la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. A pesar de ser un asunto discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones[20] esboza los siete criterios que el tribunal tomará en consideración al determinar la expedición de un auto de *certiorari*. Estos son:

A.   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B.   Si la situación de hechos planteada es la más indicada para el análisis del problema.
C.   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D.   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E.   Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F.   Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G.   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
4 L.P.R.A. Ap. XXII-B, R. 40.

Por tanto, la discreción judicial "no se da en un vacío ni en ausencia de otros parámetros",[21] sino que el tribunal revisor debe ceñirse a los criterios antes transcritos. **Si luego de evaluar los referidos criterios, el tribunal no expide el recurso, el tribunal puede fundamentar su determinación de no expedir, mas no tiene obligación de hacerlo.** Esto es cónsono con el fundamento cardinal para la adopción de la Regla 52.1, *supra*, que es "atender los inconvenientes asociados con la dilación que el antiguo esquema ocasionaba en los procedimientos, así como la

---

[19] Hernández Colón, *Derecho Procesal Civil*, 5ta ed., LexisNexis, San Juan, 2010, pág. 476. Destacamos que la Regla 52.1, *supra*, no es aplicable a otros procedimientos sumarios especiales no regulados por las Reglas de Procedimiento Civil.
[20] Véase: 4 L.P.R.A. Ap. XXII-B, R. 40 (Supl. 2011).
[21] *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).

incertidumbre que se suscitaba entre las partes del litigio". *IG Builders et al. v. BBVAPR*, *supra*, pág. 336.

**III**

En el recurso ante nuestra consideración, el Estado plantea que el caso está sujeto a la paralización solicitada porque el *Confirmation Order* levantó un interdicto permanente que protege al deudor de reclamaciones pasadas, presentes y futuras. Esto implica que las reclamaciones quedan descargadas y, como resultado, el deudor queda liberado de estas. Cónsono con lo anterior, añaden que la única vía para cobrar una reclamación luego de instituido el interdicto era mediante la presentación de un *Administrative Expense Claim*, para el cual los reclamantes interesados tenían una fecha límite. Ante estos parámetros discute que los recurridos no lograron someter la solicitud requerida dentro del término establecido.

Por otro lado, también menciona que el requisito de dicha solicitud fue modificado por la Corte de Título III para permitir reclamaciones al amparo de la *Ley de Pleitos Contra el Estado* dentro de los límites estatutarios de $75,000.00 o $150,000.00. Sin embargo, alega el Estado que dicha modificación al interdicto no es de aplicación a la controversia que nos compete ya que los recurridos reclaman una cantidad mucho mayor a los límites establecidos por ley, ascendiendo a $1,000,000.00.

Primeramente, nos corresponde evaluar si el recurso ante nuestra consideración versa sobre alguna de las materias contenidas en la Regla 52.1 de Procedimiento Civil, *supra*. Ahora bien, en segundo lugar, debemos analizar el asunto que se plantea ante nosotras tomando en consideración los criterios establecidos en Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Revisado el expediente a nuestra disposición junto al derecho aplicable, no vemos presente alguno de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*. Es decir, no nos encontramos ante un supuesto donde el TPI hubiese actuado con prejuicio,

parcialidad o con error craso y manifiesto. De igual forma, somos del criterio que no se justifica nuestra intervención en esta etapa del procedimiento, por tal razón procedemos a denegar la expedición del recurso de c*ertiorari* para que continúen los procedimientos del manejo del caso en el TPI.

**IV**

Por lo anteriormente expuesto denegamos expedir el presente auto de *certiorari*.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones